UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASKO PROCESSING, INC., a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KIBBLE & PRENTICE HOLDING COMPANY, a Washington company; and CITIZENS INSURANCE COMPANY OF AMERICA, a foreign company,<br><br>Defendant. | Case No. C17-1393RSM<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' Motions for Summary Judgment. Dkts. #12 and #15. Plaintiff Asko Processing, Inc. ("Asko") argues for partial summary judgment on its claims for reformation and breach of contract, citing to evidence of mutual mistake in the insurance contract's formation. Dkt. #12. Defendant Citizens Insurance Company of America ("Citizens") opposes that Motion and argues in a separate Motion that all of Asko's claims should be dismissed. Dkts. #24 and #15. For the reasons set forth below, the Court DENIES both parties' Motions for Summary Judgment.

//

//

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 1

# I. BACKGROUND

Plaintiff Asko provides electroplating, anodizing, and other related metal finishing treatment services for the aerospace and electronics industries. Dkt. #13 at 1–2. Asko operates out of several locations in the Puget Sound area of Western Washington. For the time period relevant to this case, these locations included three buildings located at 434, 456, and 462 North 35th Street in Seattle. *Id*. at 2. For clarity, the parties refer to the buildings by address. The 456 location served as a shipping and receiving terminal for Asko's customer's parts before and after work was performed on them, housed Asko offices, and provided storage for supplies. *Id*. Parts from Asko's customers were stored at the 462 location before being processed at the 434 location and then returned to 456 for shipment back to Asko's customers. *Id*. Asko has testified that the 462 location served as its "warehouse" on the 400 block of N. 35th Street, storing "customers' merchandise." *Id*.; Dkt. #14-1, Ex. A at 183:23-184:8.

On September 30, 2011, Asko first obtained insurance on its properties from Defendant Citizens through its broker, Kibble & Prentice ("Kibble"). *See* Dkt. #16-1 at 118. Throughout the relevant time period, Citizens provided $200,000 in business income ("BI") coverage[1] for the 462 location and $1,190,000 in BI coverage for the 456 location. Asko renewed that coverage annually. How those two coverage figures came to be applied to those two addresses is at issue. Representatives from Citizens and K&P have testified at deposition that they intended for Citizens to provide BI coverage for Asko's "warehouse" on the 400 block of North 35th Street in the amount of $1,190,000. Dkt. #14-1, Ex. C, at 68:24-69:11; Ex. D, at 63:10-64:2. However, the parties do not appear to agree that Asko's 462 location—and that location alone—served as Asko's warehouse on the 400 block of N. 35th Street. *See* Dkt. #14-1, Ex. C

---

[1] Business Income insurance is a form of property insurance that provides lost income and extra expenses if the insured has a loss causing production to shut down or there is "downtime." Dkt. #16-1, Ex. H at 26:12-20.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 2

at 43:22–44:4 ("Q. Can you agree that on the date of the loss there was no warehouse at 456 North 35th Street in Seattle? A. I don't know that I can agree with that. My understanding is there is storage at that facility."); Dkt. #13 at 2. In any event, the $1,190,000 in BI coverage was placed on the 456 location explicitly, which Citizens' underwriting documents described as a warehouse. Dkt. #14-1, Ex. B at 42:16-21.

Since at least 2005, and before Defendant Citizens involvement, the property at 462 had BI insurance in the amount of $200,000. *See* Dkt. #16-1, Ex. B at 20:14-21:4, and Ex. J. Kibble prepared annual insurance summaries for Asko that showed the $200,000 BI limit on 462. Dkt. #16-1, Ex. B at 77:23-78:18. Kibble also prepared "statements of value" ("SOV"), which reflect the amount of insurance coverage, including BI limits, associated with each of Asko's properties. These SOV's show a $200,000 BI limit on 462. Dkt. #16-1, Ex. J. Importantly, these SOV's listed the Asko property at 456 N 35th as "ASKO – Warehouse." *Id*.

On September 30, 2014, a fire occurred at Asko's 462 location. *Id*. at 3. This fire was significant enough to "essentially shut down Asko's entire operation." *Id*.

Following the fire, Kibble sought reformation of the policy on Asko's behalf so that there would be $1,190,000 in BI limits for the damaged 462 building instead of just $200,000. Citizens refused to reform the policy. Dkt. #14-1, Ex. I and Ex. J. Asko originally filed this suit in King County Superior Court; Citizens removed on September 15, 2017. Dkt. #1. Asko brings claims against Citizens for reformation, breach of contract, insurance bad faith, and claims under the Insurance Fair Conduct Act ("IFCA") and Washington State's Consumer Protection Act ("CPA"). Dkt. #1-3. On October 26, 2017, Asko and Citizens each filed a Motion for Summary Judgment. Dkts. #12 and #15. Pursuant to stipulation, Responses were filed on November 13, 2017, and no reply briefs were filed. *See* Dkt. #11.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 3

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Reformation of the Insurance Contract

Under Washington law, insurance contracts are subject to reformation like any other contract when there is a showing of mutual mistake. *Rocky Mt. Fire & Cas. Co. v. Rose*, 62

Wn.2d 896, 902, 385 P.2d 45 (1963). A trial court may use its equitable power to reform a contract where there is clear, cogent and convincing evidence of a mutual mistake or a unilateral mistake together with inequitable conduct. *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843, 999 P.2d 54 (2000); *See also Wash. Mut. Savings Bank v. Hedreen*, 125 Wn.2d 521, 886 P.2d 1121 (1994). "Mutual mistake occurs if the intention of the parties is identical at the time of the transaction and the writing executed by them does not express that intention." *Wilhelm*, 100 Wn. App. at 843. In order to reform a contract on this basis, a court must find not only that a mistake has occurred, but also that the mistake concerns a material fact. *Simonson v. Fendell*, 101 Wn.2d 88, 92, 675 P.2d 1218 (1984). The test of materiality is "whether the contract would have been entered into had the parties been aware of the mistake." *Id*.

Asko argues there is no question that the parties had the identical intention to insure Asko's "warehouse," for $1.1 million, but that the written insurance contract mistakenly placed $200,000 in coverage on the warehouse and $1.1 million on a neighboring Asko property. Citizens sharply disagrees with this interpretation of the record, arguing that the written insurance contract, and several other writings, repeatedly show $200,000 of coverage on the 462 building and describe the neighboring 456 building as a warehouse, and that Asko's continued reliance on those writings should serve as evidence of its intent.

In its Response to Citizens' Motion, Asko argues that Citizens fails to address Asko's evidence of mutually expressed intent to insure Asko's "warehouse" for $1,190,000. Dkt. #23 at 4. Asko argues that Citizens' written record evidence amounts to a "longstanding mistake," and that "courts have no issue finding that insurance policies should be reformed even if the same mistake occurred over multiple policy years." *Id*. at 5 (citing *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, 2011 WL 856374, *16 (D. Md. 2011); *Caliber One Indem. Co. v. Wade*

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 5

*Cook Fin. Corp.*, 491 F.3d 1079 (9th Cir. 2007); *Polaroid Corp. v. Travelers Indem Co.*, 610 N.E.2d 912 (1993)). Asko argues that Citizens has not presented evidence that Asko itself, as opposed to Kibble, reviewed and approved of the amount of coverage for these properties for annual renewals. *Id*. at 6 n.1.

The Court has reviewed Asko's evidence of mutual mistake and finds it insufficient to grant summary judgment. There is a genuine issue of material fact as to whether the 462 location is the only "warehouse" the parties could have intended to receive $1,190,000 in BI coverage. Asko mischaracterizes deposition testimony of Citizens' 30(b)(6) witness, who merely agreed with the factual accuracy of the statement that its subsidiary "agreed to sell business income insurance to [Asko] with $1,190,000 in limits for [Asko]'s warehouse on North 35th Street in Seattle." Dkt. #15-1, Ex. C at 68:24–69:7. In the same deposition, this witness also stated that Citizens believed that the 456 building was a warehouse, *Id*. at 43:22–44:4; *id. at* 46:13-21. Furthermore, the written record provides contrary evidence that the parties intended, and reaffirmed their intention, to place $1,190,000 in BI coverage on the 456 property. Asko's involvement in the preparation and review of these written documents is in dispute and not clarified in the record before the Court. In sum, the evidence presented by both sides is inconclusive and the case law above establishes a path for Asko to obtain reformation. Because of all of this, summary judgment cannot be granted on this claim for either party.

### C. Breach of the Insurance Contract

Asko argues that the Court must grant summary judgment on the breach of contract claim if the court reforms the contract. Dkt. #12 at 15–16. Citizens argues that the insurance contract provided for $200,000 in BI coverage on the 462 property, and that this has been paid. Dkt. #24 at 15 (citing Dkt. #25-1, Ex. R at 81:18-82:11).

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 6

The Court agrees that Citizens has fulfilled its contractual obligation to pay under the applicable insurance contract absent reformation. Citizens does not address Asko's argument that this claim is intertwined with its claim for reformation. The Court will not dismiss this claim so long as Plaintiff's reformation claim remains to be decided.

**D. Remaining Claims**

Claims of insurer bad faith "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 196 P.3d 664, 668 (2008) (citing *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 169 P.3d 1, 8 (2007)). "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Id.* Ordinarily, whether an insurer acts in bad faith is a question of fact for the jury, unless reasonable minds could reach but one conclusion. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274, 1277 (2003). Context is critical to determining whether an insurer committed bad faith. *See Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 17 P.3d 1229, 1236 (2001); *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140, 1145 (1996) ("To determine whether [an insurer] acted reasonably, fairly, or deceptively, it is necessary to consider the circumstances surrounding the allegedly improper act."). Furthermore, the duty of good faith "is broad and all-encompassing, and is not limited to an insurer's duty to pay, settle, or defend." *St. Paul Fire and Marine Ins.*, 196 P.3d at 669. Thus, even where there would be no coverage or right to a defense under the policy terms, if an insurer mishandles a claim in bad faith, a cause of action based on this conduct remains viable. *Id.* at 668.

IFCA allows an insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in the superior court of this state to recover the actual damages sustained." Wash. Rev. Code § 48.30.015. "[A] reasonable basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer acted in bad faith or in violation of the Consumer Protection Act." *Pleasant v. Regence Blue Shield*, 181 Wn. App. 252, 270, 325 P.3d 237 (2014) (citing *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 260, 928 P.2d 1127 (1996)).

Citizens argues that, even if the Court disagrees with its position on the issue of reformation, Citizens' actions in paying out the $200,000 BI limits on the 462 property and refusing to agree to reformation of the contract were reasonable. Dkt. #15 at 10. Citizens points out that "Asko also contends Citizens acted in bad faith by refusing to extend the suit filing deadline." *Id.* (citing Dkt. #1-3, ¶ 4.2). Citizens responds to this second basis for the bad faith claim by arguing that "the duty to act in good faith does not require a contracting party to contradict the express terms or conditions agreed to by the parties." *Id.* (citing *Tacoma Auto Mall, Inc., v. Nissan North Am., Inc.*, 169 Wn. App. 111, 128, 279 P.3d 487, 497 (2012)). Turning to the IFCA claim, Citizens argues that there is no cause of action under IFCA "for violations of insurance regulations absent an unreasonable denial of coverage or benefits." *Id.* (citing *Perez-Crisantos v. State Farm*, 187 Wn.2d 669, 686, 390 P.3d 476 (2017)). Citizens addresses each of the cited WAC regulations in the Complaint and argues why they do not apply to the facts of this case. *Id.* at 11. Citizens argues that the CPA claim relies on the same WACs and is generally identical to the IFCA claim, and should be dismissed for the same reasons. *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 8

Asko retorts that questions of fact preclude summary judgment on all of these remaining claims. *See* Dkt. #23 at 6–12. Asko argues, without citation, that "Citizens' reformation guidelines and past practices supported reformation of the policy" and that specifically "both its reformation guidelines and past practices supported reformation even in the event of a unilateral mistake by the agent." *Id*. at 8. Asko previously cited to applicable Citizens guidelines in its Motion for Partial Summary Judgment. Those guidelines stated, "[r]eformation is appropriate when the Claim Department has concluded there is no coverage under a policy, but for business reasons the company wishes to consider amending or reforming the policy after the loss to provide coverage retroactively and/or prospectively for future losses of a similar nature," and that "[t]his typically occurs when the parties mutually intended that coverage should be afforded for certain losses, but due to a mistake that was made when the policy was issued or at some later point, coverage was not provided under the policy." Dkt. #14-2 at 17. The same document also stated that "Policy Reformation is appropriate to… "[a]dd coverage that the Agent (Agency) or company intended to provide for the Insured on the date of the loss and beyond…" *Id*.

Viewing this evidence and drawing all reasonable inferences in the light most favorable to Asko as the non-moving party, the Court must conclude that a genuine issue for trial remains on these claims. As previously set forth, whether an insurer acts in bad faith is ordinarily a question for the trier of fact, unless reasonable minds could reach but one conclusion. *Smith, supra*. Citizens' Motion for Summary Judgement on the remaining bad faith, IFCA, and CPA claims essentially asks the Court to determine whether Citizens' refusal to reform the insurance contract was reasonable; this question is closely intertwined with the first question of whether reformation should or should not occur due to mutual mistake. Because the latter cannot be

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT CITIZENS' MOTION FOR SUMMARY JUDGMENT - 9

answered at this stage due to questions of fact, the Court cannot grant summary judgment on these claims.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that both parties' Motions for Summary Judgment (Dkts. #12 and #15) are DENIED.

DATED this 7 day of February, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE